Since the case of Paul vs. Frazier [ante, page 71] was printed, the Reporter has been furnished, by the counsel for the plaintiff, with a copy of the record of the case of Susanna Holding vs. Joseph Bright, decided in the Superior Court, Middlesex, January term, 1730.
The declaration was similar to that in Paul vs. Frazier, and at the inferior court the defendant recovered his costs. But upon the appeal, it was considered by the Court [viz. Lynde, C. J., and Davenport, Dudley, Quincy, and Gushing, * justices] [ * 566 ] that the writ was good, and well brought, that the judgment of the inferior court be reversed, and that the said Susanna Holding should recover against the said Joseph Bright costs of courts.
The plaintiff brought her action de nova for the same cause after the above judgment was rendered, and at the Superior Court in Middlesex, July term, 1731, had a verdict for fifty pounds damage, and judgment accordingly.
*494 I.
Opinion of the Justices of the Supreme Judicial Court on certain questions referred to them by the Senate of Massachusetts, in the year 1791.
The justices of the Supreme Judicial Court, in obedience to your honors’ orders of the 14th of February last, beg leave to submit the following opinions, in answer to your honors’ questions.
First. Whether a bill or resolve, having passed both branches of the legislature, and being laid before the governor for his approbation, less than five days before the recess of the General Court next preceding the last Wednesday in May, and five days before the period when the constitution requires the General Court shall be dissolved, but not acted upon by him, has by the constitution the force of law.
If by recess in this question is meant a recess after a prorogation ' or recess after an adjournment, where there is no subsequent meeting of the same General Court on that adjournment, we are clearly of opinion that such bill or resolve has not the force of law.
Secondly. Whether a bill or resolve, having passed both branches of the legislature, and being laid before the governor for his approbation, less than five days before any recess of the General Court, other than such as is stated in the preceding question, and not acted upon by him, has the force of law.
If by the term recess, in the second, is intended a recess upon an adjournment, and such bill or resolve lays more than five days before the governor for his approbation, including the days of the Court’s sitting before the adjournment, and so many days [ * 568 ] of the * Court’s sitting upon the adjournment, as will make up the full term of five days, without the governor’s returning the same, with his reasons for not approving it, we conceive such bill or resolve has the force of law; for all the days of the Court’s sitting are but one session, although an- adjourn ment intervenes. When a prorogation takes place, the session ;s *495 ended, and a bill or resolve, after the session is ended, cannot acquire the force of law.
All which is humbly submitted.
NATHANIEL P. SARGEANT,
FRANCIS DANA,
ROBERT T. PAINE,
INCREASE SUMNER,
CUSHING.
t> , tu a ,-qi Boston, May 9, 1791.
Hon. President of the Senate of the Commonwealth of Massachusetts.
II.
A Letter from, the Justices of the Supreme Judicial Court to the Governor of the 'Commonwealth of Massachusetts, in Answer to a Question upon which he had requested their Opinion.
May it please your excellency.
We have received your letter requesting of the justices flf the Supreme Judicial Court, agreeably to the provision of the constitution, their opinion on the following question:
“ Whether the constitution of this commonwealth authorizes in habitants of any of the unincorporated plantations in the state to give in their votes for governor and lieutenant-governor ? ”
Having considered that question, we now transmit to. your excellency the best opinion we have been able to form.
The constitution of the commonwealth is an original compact, expressly, solemnly, and mutually made between the people and each citizen. On this compact is founded, not only the powers and duties of the several magistrates and officers of government, as the substitutes and agents of the people, but also the political rights *and privileges of each citizen. The answer [ * 569 ] to that question must, therefore, solely depend on the construction of the constitution.
As the description of the qualified voters for governor refers to the qualifications of voters for representatives and senators, it is necessary to consider- those parts of the constitution which respect, as well the election of the two branches of the legislature, as of the first executive magistrate.
In the 4th article of the 3d section of the first chapter, the citizens, having a right to vote in the choice of a representative, are very accurately described. This right is vested in every male person, twenty-one years of age, resident in the town, for whose representative he shall vote, for one year next preceding, and having the estate in that article mentioned.
*496 The qualifications of the voters for senators are described in the 2d article of the 2d section of the same chapter. In the first paragraph it is declared, that at a meeting of the inhabitants of each town in the commonwealth, every male inhabitant of the age of twenty-one years, having the estate there mentioned, shall have a right to give in his vote for the senators of the district of which he is an inhabitant.
By the 2d paragraph, the selectmen of the several towns are obliged to preside at such meetings, and to receive the votes of all the inhabitants of such town, present and qualified. And provision is made for the counting of the votes by the selectmen, in the presence of the town clerk ; for recording the same in open town meeting by the town clerk, in the presence of the selectmen ; and for the transmission to the secretary’s office of the list of votes by the delivery to the sheriff by the town clerk, of a copy of the record' attested by him, and by the selectmen, sealed up and superscribed to the secretary; or by a delivery of a copy of that record at his office. If the constitution had given no further description of any other persons who might vote in the choice either of representatives or of senators, the conclusion is manifest that no citizen, unless an inhabitant of some town, could be deemed a legal voter.
As early as the year 1761, an act was passed, providing for the levying and collecting province and county taxes on plantations not incorporated, and for this purpose obliging the inhab- [ * 570 ] itants of plantations, *thus taxed, to choose clerks, assessors and collectors. This act was in force when the constitution was formed, and a practice had existed of levying public taxes on certain unincorporated plantations. The 23d article of the declaration of rights had provided that no tax ought to be levied, under any pretext whatever, without the consent of the people, or of their representatives in the legislature. The operation of this article would control not only the method then existing of levying county taxes, by rendering the consent of the legislature necessary to the assessment, but would also exempt from the power of taxation by the General Court all unincorporated plantations, unless some further constitutional provision should be made.
It was, therefore, thought necessary, either to provide some representation in the legislature for the unincorporated plantations, on whom public taxes had been, or were to be levied, or to abandon the usage of taxing them. To give them representatives in the house would be inconvenient, if- practicable. But to admit them to a representation in the senate was a provision easy to make, and the right to tax them would remain. On this ground the third paragraph was introduced, extending to two classes of unincorporated plantations. One class comprehends the plantations who were *497 assessed to the support of government, by the assessors of adjoining towns. The inhabitants of these plantations, having the necessary qualifications of age and estate, were authorized to meet and vote for senators with the inhabitants of the towns by whose assessors they were assessed. The other class comprehends the plantations who were empowered to assess themselves. The inhabitants of these plantations, duly qualified as to age and estate, were author ized to meet and vote for senators, within their plantations, and for the purpose of receiving, counting, declaring and returning the votes, their assessors were substituted in the places, both of the selectmen and clerks of towns.
No provision was necessary for plantations on whose inhabitants public taxes were not levied.
We shall now advert to those parts of the constitution which have a more express relation to the proposed question, and they are contained in the first section of the second chapter.
*The 3d article declares that those persons, who shall [ * 571 ] be qualified to vote for senators and representatives with- - in the several towns shall, at a meeting to be called for that purpose, give in their votes for a governor to the selectmen, who shall preside at such meetings ; and the town clerk, in the presence, and with the assistance of the selectmen, shall, in open town meeting, sort and count the votes, form a list of the persons voted for, with the number of votes for each person against his name, make a fair record of the same in the town books, and a public declaration thereof in the same meeting, and shall, in the presence of the inhabitants, seal up copies of the said list, and transmit the same to the sheriff; or the selectmen may cause returns of the same to be made to the office of the secretary.
From the language of this article it very clearly appears to us, that no person, although qualified by his age and estate, can legally vote for governor, unless he be an inhabitant of some town, or of some corporation having all the powers, privileges and immunities of, and by law deemed to be a town, so far as may relate to the subject of this article. For his vote must be given at a town meeting, which, from the force of the term, must be an assembly of town inhabitants, to be called for that purpose, and to the presiding selectmen ; and the list of votes must be recorded by a town clerk, in the town books, in open town meeting, and a copy of it sealed up in the presence of the inhabitants.
The consequence therefore is inevitable, that the inhabitants of unincorporated plantations, not being able to assemble in town meeting——having no selectmen to preside—nor town clerk to form a list of votes, or to record it in open town meeting, or seal up a copy of it, in the presence of the inhabitants, are not included in the description of the persons qualified to give in their votes for a governor
*498 If there be any part of the constitution which can excite a color of doubt on this subject, it must be the section describing the qualifications of voters for senators. In the ‘3d paragraph of that section, the inhabitants of certain unincorporated plantations are admitted to the privilege of a representation in the senate ; and the reason for that admission has already been mentioned. [ # 572 ] To extend *the privilege further, is without the letter of the constitution, and is required neither by the principles, nor spirit of it, which does not consider a governor as a representative of the people in their legislature.
If the convention had intended to vest this privilege in the innabitants of unincorporated plantations of any description, it was easy to express that intention, and to provide for its execution ; for the manner of choosing senators had already been defined. And in the election of the first executive magistrate, it is difficult to assign a good reason why plantations, taxed for the support of government, should be distinguished from all other plantations, who are alike interested in that election.
If it should be supposed that this mode of reasoning will exclude the inhabitants of districts from voting for governor, because they have not the corporate names of towns, it may be observed that the argument is not founded merely on the name of the corporation, but on the nature and extent of its powers, privileges and immunities, and on the description of the officers it is by law competent to elect. It was formerly the usage of the legislature to incorporate the inhabitants of particular places, not only by the name of districts, with all. the powers, privileges and immunities of towns, except the right of choosing a representative, but also by the name of towns, with the same powers, privileges and immunities, and under the same exception. From the terms of the incorporation, therefore, it appears, that districts are towns, with the same officers, but without the right of electing a representative. And because the late province statute of 1 Geo. 3, c. 2, on this principle, had enacted that districts should, to all intents and purposes, be considered as towns, the privilege and duty of sending a representative excepted, it was unnecessary, in the constitution, to distinguish districts from towns. For the inhabitants of districts having all the powers, privileges and immunities of towns, and being by law to be considered as towns, to all intents and purposes, except in the election of a representative, whatever privilege, not within that exception, is vested, by the constitution, in the inhabitants of towns, may be enjoyed by the inhabitants of distiicts.
It is unnecessary to consider distinctly the quál- [ * 573 ] ifications of the * voters for a lieu tenant-go* ernor, for by the 2d section of the 2d chapter of the constitution, that officer is to be elected by the same persons, *499 and in the same manner, as are prescribed for the election of the governor.
Without detaining your excellency any longer, we are obliged, after full deliberation, to certify as our opinion,
That the constitution of this commonwealth doth not authorize the inhabitants of any of the unincorporated plantations in the state to give in their votes for governor and lieutenant governor.
We are, with respect,
Your excellency’s humble servants,
THEOPHILUS PARSONS,
SAMUEL SEW ALL,
GEORGE THATCHER,
ISAAC PARKER.
Boston, January 3d, 1807.
A Reading upon the Provincial Statute of Massachusetts Bay “for Registering of Deeds and Conveyances.” By the late Hon Edmund Trowbridge, one of the Judges of the Superior Court of Judicature, &c.
The province law of 9 Will. 3, c. 7, empowers persons to convey real estate by deed acknowledged and recorded; and provides that no bargain, sale, mortgage, or other conveyance of houses or lands, made and executed in this province, shall be good and effectual in law to hold such houses or lands, against any person or persons but the grantor or grantors, and their heirs only, unless the deed or deeds thereof be acknowledged and recorded.
By the statute of 1 Jac. 1, c. 15, commissioners are empowered to sell and convey a bankrupt’s real estate, by deed indented and enrolled ; but as the act limits no time for the enrolment, the estate doth not pass until the deed is enrolled, as was held in the case of Perry vs. Bowes, 2 Jones, 196. 1 Vent. 360. Skin. 30. And for the same reason it has been held by some, that “ the estate doth not pass here until the deed is recorded, no time being limited by the provincial act for recording the deed.”
* But in answer thereto it may be said there is a ma- [ * 574 ] terrai difference between a deed of bargain and sale, made by one that has an estate and interest in the land, and by one that has not. When such a deed is made, bona fide, and for a valuable consideration, by one that has an estate in the land, a use arises out of that estate to, and vests in the bargainee; and the statute of 27 H. 8, c. 10, commonly called the statute of uses, vests the possession of the land in him that has the use, so soon as it arises. But the commissioners have no estate or interest in the bankrupt’s houses or lands, and only a naked power to sell and *500 convey the same by deed indented and enrolled; and therefore, unless the power be executed in the manner and by the means the statute prescribes, the estate will not pass; for such powers must be strictly pursued in form and substance, or the acts done under them will not be effectual. 2 Jones, 196. 1 Burr. 120.
Was it not for the restrictive clause in the province law, houses and lands might be conveyed here by one that has an estate or interest in them, without recording the deed, as well as they might have been in England, before the statute of 27 H. 8, c. 16, called the statute of enrolment. The deed would have raised a use to the bargainee, and the statute of uses, which extends here, would have vested the possession in him that had the use, here as well as there. The bargainee’s estate in the land would have been complete, without the aid of the province law, livery of seisin, or recording the deed,' had it not been for that restrictive clause in the act; for the statute of enrolment never did extend here. How far that clause prevents it, is therefore carefully to be considered.
The first paragraph of the province law only provides that such as have good and lawful right or authority to convey houses or lands, nay do it by deed acknowledged and recorded, without any other act or ceremony; and the next amounts to no more than that no conveyance of houses and lands made and executed in this province, by such as have good and lawful right or authority to convey the same, shall be sufficient to enable the person or persons to hold such houses or lands, against any other than the grantor or grantors, and their heirs only, unless the deed or deeds thereof be acknowledged and recorded.
The makers of this act surely did not intend thereby [ * 575 ] to enable any * person to convey houses or lands, that .neither had, nor appeared to have, good and lawful right or authority so to do. The act does not ascertain who has, or has not, such a right. The common law had long before settled that matter; and the provincial act leaves the rules and maxims of the common law in that respect to take place.
It is a maxim in common law that a right of entry, or a chose m action, cannot be granted or transferred to a stranger. Littleton, <§, 347, says, “ No entry or reentry may be reserved or given to any person, but only the feoffor, donor, lessor, or their heirs.” And Lord Coke’s commentary is this: “ Here,” says he, “ Littleton reel teth one of the maxims of the common law, and the reason hereof is, for avoiding maintenance, suppression of right, and stirring up of suits; and, therefore, nothing in action, entry or reentry can be granted over; for so under color thereof pretended titles may be granted to great men, wnereby right may be trodden down, and the weak oppressed, which the common law forbiddeth; as men to grant before they be in possession.” And he afterwards says, page 266, “ By common law, no charter, sale, or gift will be good, if the. *501 donor at the time of the contract is not seised of two rights, viz., the right of possession and the right of property.” And Dr. Black stone says, “ If a man has only in him the right of either possession or property, he cannot convey it to any other.” 2 Bl. Comm. 290. To a stranger he must intend; for one by a mere release may convey his right of property to one that is in possession of the lands or tenements, because the occupancy of the releasee is matter of sufficient notoriety already. 2 Bl. Comm. 325.
All persons in possession arc prima facie capable of conveying and purchasing, unless the law has laid them under particular disa bilities. 2 Bl. Comm. 290. And, therefore, if the bargainee, with out recording his deed, suffers the bargainor to remain in possession of the land, and he sells it to another, who has no notice of the first sale, and that deed is recorded before the first, he shall hold the land ; because in such case the law supposes the first deed to have been fraudulently made, upon the same principle that it deems a bill of sale of goods, suffered to remain in the possession of the vendor, to be so.
The bargainor is certainly guilty of a fraud in making the first or * second deed. If the first was fraudulent, [ * 576 J no injury is done to the first bargainee by the second sale. If the first was a bona fide sale, the bargainor is guilty of a fraud in making the second, and the first purchaser is in some measure accessory to it, by suffering the bargainor to remain in possession of the land", without recording the deed; whereby he appeared capable of conveying it, and so drew in an innocent person to purchase the estate, and give a full price for it. And, therefore, the estate shall pass to one who has been guilty of no fault at all, rather than to an accessory to the fraud. And for that reason only doth it pass to him, where the first was a bona fide sale; for if the second purchaser had notice of the first conveyance before he purchased, no estate would pass to him by the second deed, though recorded before the first, because it is fraudulent.
In the case of Worsely & Al. vs. De Mattos & Al., 1 Burr. 474. Lord Mansfield says, “ Valid transactions, as between the parties, may be fraudulent,by reason of covin, collusion or confederacy to injure a third person.” And he gives this instance, “ A buys an estate from B, and forgets to register his purchase deeds. If C, with express or implied notice of this, buys the estate for a full price, and gets his deed registered, this is fraudulent, because lie assists B to injure A.” And so it was decreed in chancery in the case of Blades vs. Blades, 1 Eq. Ab. 358, pl. 12. The registry is designed only to give notice, in order to prevent purchasers being imposed upon by prior conveyances; which they are in no danger of, when they have notice of them. 2 Bl. Com. 338.
If one seised in fee of land, i. e. having tae right <sr property in *502 the land, and also the possession thereof, for a valuable consid eration, by deed bargains and sells the land to another in fee, the deed gives the bargainee a right to enter, and when he enters by force of that right, he then is possessed of the land, and complete tenant in fee; and such entry, being followed by a visible improvement of the land, and taking the profits thereof, is such evidence of an alteration of the property, as will amount to implied notice thereof.
The ceremony of livery of seisin, used in the conveyance of estates of freehold and inheritance, was supposed to make the [ s 577 ] alteration * of property from the feoffor to the feoffee sufficiently notorious. And as livery of seisin was not used in passing an estate for years, an actual entry of the lessee was necessary to vest the estate in him. “ The mere lease ” (says Dr Blackstone) “ gives him a right to enter, and when he enters by force of that right, he is then, and not before, in possession of the term, and complete tenant for years. And such entry by the tenant himself serves the purpose of notoriety, as well as livery of seisin from the grantor would have done.” 2 Bl. Comm,. 314. If so, surely the entry of the bargainee by force of the deed, which gives him not only a right to enter, but also a right to hold the land against the grantor and his heirs forever, must alike serve the purpose of notoriety. The lease is not enrolled, nor the deed recorded ; the former may be kept as secret as the latter; the entry and occupancy, which are alike in both, equally serve the purpose of notoriety. The occupant in both cases is prima facie supposed to be the owner of the land, and upon inquiry will be found to be so. No fair purchaser is, in such case, in danger of being defrauded, if he uses the caution he ought to do.
Dr. Blackstone, afterwards treating of trusts and uses, says, “ The trustee is considered merely as the instrument of conveyance, and can in no shape effect the estate, unless by alienation for a valuable consideration to a purchaser without notice; which can rarely happen, as the cestui que use is generally in possession of the lands.” 2 Bl. Comm. 337.
The Court of Chancery indeed considers a trust estate as equivalent to the legal ownership; but the common law courts do not. By the common law, the legal estate is in the feoffee or bargainee, who is the trustee; and yet by that very law, the cestui que use being in possession of the land, the trustee cannot convey it to a purchaser without notice in the legal sense of the words; for though the cestui que use has no estate in the land, and the trust is secret, yet his possession being open, that is such evidence of his having some right in or to the land, as that the law deems it notice thereof to any one who would purchase the estate of the trustee; and such notice as will make the sale fraudulent, and prevent the *503 estate’s * passing. But if the trustee is in possession, [ * 578 ] and for a valuable consideration bargains and sells the land to one who knows not of the trust, and the deed is enrolled, the estate will pass to him, being a fair purchaser, although the trustee is guilty of a fraud in doing it. This is implied in what Dr Blackstone says above.
And upon the same principles, as the common law does not alter the province law in these respects, if the bargainor here remains in possession of the land, without the deed’s being recorded, he may make a second conveyance thereof to one who knows not of the first; because the bargainor then appears to have the right of [ms-session, and property also. And on the other hand, if the bargainee, upon the execution of the deed, enters by force of it, and continues in possession of the land, taking the profits thereof without recording his deed, there can be no purchaser of that land without notice in the sense of the law; because the law deems such entry and occupation sufficient evidence of an alteration of property. And the bargainor, having neither the real nor apparent right of possession, or of property, is not capable of conveying the land ; and a deed of the land from him to a third person, is, by the common law, accounted fraudulent and void.
If A disseises B, he does not thereby take from him his right o property, or his right to have possession; and yet until B regains the possession, the common law, for wise ends, will not allow him to convey the land, or either of those rights to a third person, so as to enable him to recover the land from the disseisor, who has no rights in law or equity to the land, and only a tortious possession thereof And surely a bond fide purchaser’s lawful possession in his own right must be as effectual to prevent a conveyance of the land, by one who really has neither the right of possession nor of property, as the unlawful possession of the disseisor is to prevent the lands being conveyed to another by him, who has the right of property in it.
The statute of 1 James, c. 15, has altered the common law with regard to the conveyance of a bankrupt’s estate, and the caution used therein is observable. The statute by express words empowers the commissioners to assign the debts due to the bankrupt, and enables the assignees to demand and recover the same. And it not only empowers the commissioners by deed indented and enrolled *to sell and convey the bankrupt’s real estate [ * 579 ] in his possession, but also such of it as he had conveyed to others after he became bankrupt, “ in as ample a manner as if the bankrupt was actually seised and possessed thereof,” and then also expressly declares that such bargain and sale shall be good and effectual in law to pass the estate to the purchaser. In this extraordinary case, it is plain the legislature intended to empower the commissioners to sell real estates which other persons had purchased *504 and were in possession of; and to alter the common law in that respect so far only as concerned the bankrupt’s estate; and they did it by express words, and in as full and clear a manner as could be. But the provincial law gives no such power in express words, or by necessary implication, and so does not alter the common law in that respect.
Objection. But it has been said, “ The bargainee here who enters by force of the deed is, until it is recorded, tenant at will to the bargainor; just as the feoffee was to the feoffor until livery of seisin ; and therefore the possession of the bargainee is the possession of the bargainor, so that he may convey consistent with the rules of the common law.”
■ Answer. This surely must have been said without due consideration. A deed of feoffment without livery of seisin amounted to no more than a license to the feoffee to enter and improve during the will of the feoffor, who, when it pleased him, might put the feoffee out. Litt. <§> 70. Whereas the bargainor here cannot put the bargainee out. The conveyance is as good and effectual in law to hold the land against the bargainor and his heirs, before the deed is recorded, as after. If the bargainor enters upon the land, the bargainee may maintain trespass against him for it; which he could not possibly do, if he was tenant at will to the bargainor, and his possession was the possession of the bargainor. The possession, therefore, of the bargainee will not aid the bargainor in the conveyance of the land to a third person.
About two years ago it was agreed by all the then justices of the Superior Court, that if, upon a bona fide sale of land for a valuable consideration, the purchaser enters and continues in possession, without recording his deed, the vendor cannot convey the land to a third person. David Richardson bargained and sold [ * 580 ] about thirty * acres of his farm in Woburn to his son; and some years after, he sold the whole farm to Fowle &f Al., who got their deed recorded before the first, and brought ejectment against both father and son, to recover the whole farm, including the thirty acres. The son insisted that his was a bond fide purchase ; that upon the execution of the deed he had entered, and ever since had been in the possession and visible improvement of the land, and produced witnesses who testified the same. The justices were unanimous in their direction to the jury, that if it was as the witnesses had sworn, the thirty acres did not pass by the second deed (1).
In answer to this objection it may be further said, that no estate passed upon a feoffment until livery of seisin was made by the feoffor; and if he or the feoffee died before livery, the deed became *505 of no effect. If the feoffor died, the land descended to his heirs ; and if the feoffee died before livery, it could not be made to his heirs ; for then he should not take as heir by descent, according to the tenor of the deed, but as a purchaser. 1 Ins. 52, b.
So it must be here in the case of bargains and sales, if the estate does not pass until the deed is recorded. For, going upon that supposition, if the purchaser dies before the deed is recorded, the estate cannot descend from him to his heirs; because it never passed to him, but remained in the bargainor. And should the deed be recorded after his death, the estate will not thereupon pass to his heirs, for the same reason that it would not pass to the heir of the feoffee, on livery being made after his death. Nor can a bargainee by deed convey the estate, or devise it by will, nor can his widow have dower, or the houses and lands be settled on any of his children by the judge of probate; and yet thousands in this province hold lands and tenements by descent and purchase, under bargainees, whose title deeds were not recorded until after their death; and as many, if not more, by force of deeds made by persons before their own title deeds were recorded. What a condition then must a great, if not the greatest, part of the people of this province be in, if the courts should so construe the provincial act of 9 W. 3, c. 7, as to determine that no estate passes to the bargainee until the deed is recorded !
*This point came to be considered by the. Superior [*581] Court on a special verdict in the case of Flucker vs. Hall, at Boston. The deed made to him of whom Flucker pur chased was not recorded until after he made the deed to Flucker; and yet the Court unanimously determined that the estate passed (2) to Flucker; which they could not have done but upon the supposition that the estate passed to the first bargainee before the- deed was recorded.
Objection. “ But if the estate passes here, before the deed is recorded, and the land cannot be conveyed by the bargainor to a second purchaser, while the first is in possession of it, though he neglects or refuses to record his deed; the first conveyance will be good and effectual in law to enable the first purchaser to hold the land against other persons than the grantor and his heirs, without recording the deed ; against the express words of the province law, and the evident design of the makers of it; and such an exposition of the act will render the second paragraph of it nugatory, if not altogether ineffectual and void.”
Answer. An estate may pass to some purposes, and not to others 3y a deed to defraud creditors, the estate passes so as to enable the grantee., his heirs and assigns, to hold the land against the grantor *506 and his heirs, but not against his creditors. It is a valid conveyance as between the parties, but being designed to injure the creditors, it is fraudulent and void as to them.
A deed of bargain and sale made, for a valuable consideration, b) one that had an estate in the land, raised a use to the bargainee by the common law ; and the statute of uses transferred the possession from the bargainor to the bargainee. The estate passed, and was effectually secured to him without registering the deed, livery of seisin, entry, or any other act of notoriety; so that fair purchasers were in danger of being defrauded by former conveyances. To prevent this, the statute of enrolment was made in England, and for the same purpose the second paragraph of the provincial act of 9 W. 3, c. 7, was inserted here.
Lord Colee, in his Commentary on the Statute of Enrolment, says, “This statute is to be intended of lawful bargains and sales, and such as would have raised uses at common law; and doth only [ * 582 ] restrain * the execution of them that be of effect, except the deed be enrolled ; and this standeth with the reason of the common law, that none but effectual deeds ought to be enrolled.” The same may be said of the province law, that it is to be intended to restrain the execution of such bargains, sales, mortgages, or other conveyances of houses or lands, as, if the deeds thereof were acknowledged and recorded, would be good and effec tuai in law to enable the purchaser to hold the .same, not only against the grantor, and his heirs, but against others also.
This act extends not to persons incapable of conveying for want of reason or possession. Such deeds are by common law ineffectual to convey houses or lands. While the bargainee is in the visible possession and improvement of the lands or tenements granted to him in fee, the bargainor is no more capable of making a second conveyance thereof to another, than a person of unsound mind would be; so that a bargainee in fee, who, upon the execution of the deed of conveyance, enters by force of it, and continues in possession, needs not the aid of the deed, or of the statute of uses, to enable him to hold the land against a second purchaser. His possession only is sufficient for that purpose; for the first purchaser’s possession of the land, being not as tenant to the bargainor, but in his own right, when the second sale was made, the deed would raise no use, nor would any estate pass by it to the second purchaser. He, therefore, could have no right to enter into the land, or to recover possession thereof from the first purchaser. His prior possession only would enable him to maintain trespass against the second purchaser, if he should enter, and would also be sufficient to prevent his recovering the land by action, because a plaintiff must recover by the strength of his own title, and not by the weakness of the defendant’s. Possession alone is sufficient to secure *507 the defendant against the demands of all such persons as have no estate or interest in the land, nor had a possession thereof prior to thé defendant’s.
It is not the deed of conveyance alone, or that together with the statute of uses, that enables the first purchaser to hold the land against the second, without recording his deed, but it is his possession. Proof of that, without showing the deed, will be sufficient. Nor will his first entry’s being by force of the deed alter the case. The tortious possession * of a disseisor would [ * 583 ] have the same effect. For if a disseisee bargains and sells lands to another, that doth not reduce and restore the possession of the bargainor, and pass the estate to the bargainee, like the feoffment which cleared all disseisins, &c., where the entry of the feoffer was lawful. 1 Ins. 9, a.—2 Ins. 672.
Nor will this exposition of the provincial act render the restrictive clause of it nugatory, ineffectual or void; for it will have effect, not only where the bargainee, without recording his deed, suffers the bargainor to remain in possession; but also where land lying waste is sold, and the purchaser neither records his deed, nor enters and makes a visible improvement; and where reversions, remainders, rents, commons, and such like incorporeal things are granted. In such cases as these, if the grantor, for a valuable consideration, bar gains and sells them again to one who knows nothing of the former sale, and the last deed is recorded before the first, the estate will pass to the second purchaser, which it would not have done, had it not been for that restrictive clause in the provincial act, as the statute of enrolment does not extend here. Nothing less than recording the deed, or filing a copy of it in the register’s office, proved as the act directs, will, in such cases as these, effectually secure the grantee’s title, or be a sufficient caution to people in general against purchasing the estate of him who is the apparent owner of it; and, therefore, if any do purchase such an estate without notice of the former sale, that clause in the act will enable them to hold it. And it is much better that clause should be satisfied with such cases, than that fraudulent conveyances, as all second purchases with notice of the first are, should be countenanced and supported by the provincial law, which it cannot be supposed the legislature ever intended.

 The two following documents containing the solemn opinion of the Court upon questions duly submitted to their consideration, pursuant to the constitution, chapter 3, article 2, it was thought expedient to transfer them from the newspapers, in which they were published, into the Reports, that a more easy and general access may be had to them, should any future discussions arise on the same subjects.

 This decision was made October term, 1770.

 Vide Hob. 136.—3 Leon. 196.-1 Wil. 213. Bellingham's case.