Parker, C. J.,
delivered the opinion of the Court.
The case presents two questions of importance, neither of which has received a judicial determination in our courts. The arguments upon them have been exceedingly ingenious as well as able, leaving nothing untouched in point of authority or general reasoning, which has relation to the subject.
The first question relates to the rejection of Mr. Fiske, as a witness, he having signed the note as agent to the Stony Brook Manufacturing Company, and being called upon to prove that the consideration of the note was usurious.
The case of Churchill vs. Suter settled for us the question, which seemed to have been undetermined in England, as to the admissibility of a party to the note, although not interested in the event of the suit, to prove the note void on account of illegality in the consideration. The principle, on which that case rests, approves itself to the mind *of every fair man, viz., that [ * 127 ] it is inconsistent with fair dealing, as well as contrary to the policy of the law, that he, who has uttered a note or other negotiable instrument as true and genuine, and given the sanction of his name to it, should afterwards contradict his own assertions, and defeat, by his evidence, the contract which he had established by his signature. This has been a standard case in our courts, and is referred to upon the exchange, and in the course of business, as furnishing a clear and intelligible rule, by which the character and value of negotiable paper in the market may in some good measure be ascertained (15).
Nothing has been done since to shake the authority of this rule. The case of Fox & Al., Administrators, vs. Whitney (16), recognizes and affirms the principle. The witness offered and admitted, it is true, had been a party to the note; but the note never having been negotiated, the question was between the original parties, or their representatives.
The question before us is, whether the case at bar comes within *104 the principle of Churchill vs. Suter; and we think it clearly does The witness, although not answerable on the note by reason of his signature, was the party who gave it currency, and put it in circulation. He must be considered as having declared by his signature, that the note was good and valid at the time it was made, for aught he knew to the contrary; and he ought not to be allowed after-wards to say that his declaration was false, and that the note is void, on account of facts known to him at the time it was signed. Corporations, who promise only by agents, ought not to be privileged ; and they would be, if they might defeat their obligations by the testimony of those whom they employ to represent them in negotiable instruments.
The other question presented by this case is of a more embar rassing nature; not so much on account of any intrinsic difficulty in construing the statute out of which the question [ * 128 ] arises, as from an unwillingness to differ from the * high authorities, who have adopted a construction, which, after mature deliberation, we think is not warranted by the statute itself, or any practical exposition which has been given to it since it was enacted, until the case of Wain vs. Warlters was decided, in the year 1804.
The case, as stated in the declaration, and as it was made out in proof, would admit of our avoiding the naked question presented by the report. For the plaintiff having made an attachment of property belonging to the company, and having relinquished that attachment upon receiving the guaranty of the defendants; according to most of the authorities, the promise would not be within the statute; there- being a new consideration, between the new contracting parties, sufficient to maintain the promise without writing. But as the question is now fairly presented to us, and has been ably argued, and as it often arises at nisi prius, we think it best to give our reasons for deciding that a promise to pay the debt of another, in writing, and signed by the party intending to be bound, is a sufficient compliance with the statute; without any recital in the writing of the consideration upon which the promise is founded.
The original promise is by the Stony Brook Manufacturing Company, by a note payable on demand. After the making of the note, and after it was endorsed to the present plaintiff, the defendants severally signed their names on the back, and over their signatures were written these words:—“We acknowledge ourselves holden as surety for the payment of the within note.” The consideration existing was, that these defendants were members of the company which made the note; and that a suit, which had been commenced, was stopped by the plaintiff, at their request. But this *105 consideration was proved by parole, and the writing acknowledges no consideration whatever.
It is somewhat remark rble that a statute, which has so important a bearing upon contracts in daily use, should have remained without the construction recently given to it, from the time of its enactment, which was in the 29 Car. *2, to the year 1804, [ * 129 ] when the case of Wain vs. Warlters was decided. That it did so remain will appear from the circumstance, that neither the counsel in arguing that case, nor the Court in deciding it, refer to any preexisting case in support of their doctrine ; a doctrine which, when announced, excited much surprise both in England and in this country.
Our provincial act was passed in the year 1692, and continued in force until the year 1788, when it was superseded by the statute of the commonwealth, which, as well as the provincial act, is similar in substance, and, except in one instance where the sense is not altered, is copied verbatim from the English statute. So that we have had the statute in operation more than a century, within which period innumerable collateral engagements have been made; and it has never, until within a few years, as far as we can ascertain, been doubted that, if one man, for a sufficient consideration, deliberately signed his name to a promise to pay the debt of another, he would be bound by it, although no consideration whatever was mentioned in the writing which he signed.
Although some consideration must exist to give validity to such a promise, it is generally of a nature not to be disputed; and if disputed, has been proved by parole testimony. The consideration need not be for the benefit of the party making the promise, and it seldom is for his benefit; forbearance to sue, or the Surceasing of a suit, being most frequently the consideration of such undertakings, and these being altogether for the benefit of the original debtor. This being the case, it would seldom, if ever, enter into the imaginations of the parties to such a contract, that, unless the motives and considerations, which led to it, were put down in writing, the engagement was void.
Having made these preliminary remarks, I shall proceed to consider the statute, and what is its most obvious construction, without reference to decided cases; and then *take [ * 130 ] a view of the decisions which have been had upon it, both in England and in this country.
The first section of our statute of 1788, c. 16, corresponds, as has been observed, exactly with the fourth section of the statute of 29 Ca*. 2. Exclusive of other subjects provided for in the same section, it enacts, “ That no action shall be brought, whereby to *106 charge the defendant upon any special promise to answer for the debt, default, or misdoings of another person, unless the agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or .some person thereunto by him lawfully authorized.”
The • obvious purpose of the legislature would seem to be to protect men from hasty and inconsiderate engagements, they receiving no beneficial consideration; and against a misconstruction of their words by the testimony of witnesses, who would generally be in the employment and under the influence of the party wishing to avail himself of such engagements. To remove this mischief, the promise or engagement shall be in writing, and signed; in order that it may be a deliberate act, instead of the effect of a sudden impulse, and may be certain in its proof, instead of depending upon the loose memory or biased recollection of a witness. The agreement shall be in writing—what agreement? The agreement to pay a debt, which he is under no moral or legal obligation to pay, but which he shall be held to pay, if he agrees to do it, and signs such agreement.
This appears to be the whole object and design of the legislature; and this is effected, without a formal recognition of a consideration; which, after all, is more of a technical requisition, than a substantial ingredient in this sort of contracts (17). And it would seem, further, that the legislature chose to prevent an inference that the whole contract or agreement must be in writing; for it is provided that some memorandum or note thereof in writing shall [ * 131 J *be sufficient. ■ What is this but to say, that if it appear by a written memorandum or note, signed by the party, that he intended to become answerable for the debt of another, he shall be bound, otherwise not?
How then is it possible, with these expressions in the statute, to insist upon a formal agreement, containing all the motives or inducements which influenced the party to become bound? Yet such is the decision of the Court of King’s Bench, in the case of Wain vs. Wai'lters.
But in a case happening in the same court a short time after-wards, on another section of the same statute, a different construc *107 tian is adopted. By the seventeenth section of the British statute, and the second section of our own, it is provided, “ That no contract for the sale of any goods, wares, or merchandise, for the price of ten pounds or more, shall be allowed to be good, except the purchaser shall accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or ir. part payment, or that some note or memorandum in writing of the said bargain be made and signed by the parties to be charged with such contract, or their agents thereunto lawfully authorized.” Yet in the case of Egerton vs. Matthews it was decided that a memorandum, containing only one side of the bargain, and without any consideration expressed, was sufficient. When this case came before Lord Ellenborough, at nisi prius, he thought it governed by the case of Wain vs. Warlters ; and it is certainly difficult to perceive a difference between the two cases (18).
If the word agreement imports a mutual act of two parties, surely the word bargain is not less significative of the consent of two. In a popular sense, the former word is frequently used as declaring the engagement of one only. A man may agree to pay money, or to perform some other act; and" the word is then used synonymously with promise or engage. But the word bargain is seldom used, unless to express a mutual contract or undertaking. If then the * technical meaning of the word agreement [ * 132 J made it necessary to insert the consideration in a collateral promise to pay, why not the word bargain also, as Lord Ellenborough at first supposed ? But the court, Lord Ellenborough consenting, overruled the decision at nisi prius, and decided that a contract for the sale of goods was valid, without any consideration expressed in the contract.
There are certainly grounds to suppose that some doubts began to be entertained of the correctness of the decision in Wain vs. Warlters. We cannot otherwise account for the unwillingness to apply the same principle to the case of Egerton vs. Matthews; and we shall see hereafter, that there was considerable cause for the Court of King’s Bench to hesitate, before they applied the rule to other cases (19).
The import of the word agreement forms the principal, if not the only ground of argument, in favor of the doctrine; and because the word bargain is used in the seventeenth section, instead of the word agreement, the law is different. Well might Chief Justice Parsons *108 say, as he did in the case of Hunt, Adm., vs. Adams, when the two cases of Wain vs. Warlters and Egerton vs. Matthews were incidentally brought before him; “ These two decisions are not easily to be reconciled. A bargain is a contract or agreement between two parties, the one to sell goods or lands, and the other to buy them. A contract of this sort is void in law, unless made on sufficient consideration. And the consideration of a bargain seems to be as necessary a part of it, as of any other contract or agreement ; and there is the same danger of perjury in proving the consideration of a bargain by parole, as of any other agreement. But if the word agreement may be understood in the popular sense, as not necessarily including the consideration for it, we may approve of the decision in the latter case, while we may doubt as to the former case” (20). [ * 133 ] *But admitting the case of Wain vs. Warlters to have been received in England, as giving the true construction of the statute, and that the rule is well settled in that country,—. which, it will be seen presently, is far from being the case,—it does not necessarily follow that it should be 'adhered to here. The decision took place long since our revolution, and can therefore be regarded only as the opinion of great and learned men, not as an authority. We are to consider what has been the practical construction in our own country; and believing that to have been for more than a century different from the rule so lately adopted in England, it would be too late for us to resort to the etymology of a word for the purpose of obtaining a new construction, and to insist upon the legal import, instead of the popular sense of terms, which the legislature are as likely to have taken in the latter as in the former sense.
But it should be considered, in the second place, that this doctrine, when first promulgated in England, was not well received by the profession, and that to this day it is doubted and questioned, whenever it is advanced. The case of Wain vs. Warlters appears to have been concurred in by all the judges of the King’s Bench, but never seems to have been cited as an authority, without an apparent reluctance in the court to apply the same rule to other cases; and, whenever it was possible, some distinction seems to have been sought out to save the case before the court from the operation of the rule.
Lord Ellenborough took the lead in the decision, grounding himself on the word agreement, and on the known accuracy of Sir Matthew Hale, who was supposed to have drawn the statute. Mr *109 Justice Lawrence, on the contrary, entertained doubts, and thought the statute loosely penned. Mr. Justice Le Blanc concurred, but expressed a wish that the statute had not reached the case of a promise, so as to require the consideration to be in writing.
*If, as Mr. Justice Lawrence thought, the statute was [ * 134 ] loosely penned, it may be supposed the word agreement was untechnically used, or used in the popular sense; in wmon case it seems agreed that the subsequent words would not require that the consideration should be in writing. The same section provides for the case of an agreement in consideration of marriage, and of an agreement not to be performed within a year. The use of the word in these provisions led to the adoption of the same word in the succeeding part of the section, without any intention, I apprehend, of prescribing the form in which a promise in writing should be drawn up, to make it binding.
I have already adverted to the case of Egerton vs. Matthews, as departing from the principle adopted in that of Wain vs. Warlters. And as late as the year 1816, in the case of Goodman vs. Chace (21), the case of Wain vs. Warlters was again brought before the King’s Bench. Chace, jun., was in the custody of an officer upon a copias ad satisfaciendum. He applied to the attorney of the creditor for time, and in the meanwhile to be released. The attorney consented, provided Chace’s father would sign a written paper in the following words: “ I do hereby undertake and agree to put the above defendant into the custody of the sheriff of H. on or before Saturday next; and in default of my doing so, I undertake to pay the damages and costs for which the said defendant has been this day taken in execution by the said sheriff, at the suit of the above-named plaintiff.” The case of Wain vs. Warlters was cited to show that the agreement was void, because no consideration was expressed in it. The counsel for the plaintiff denied the case to be law. Lord Ellenhorough said, “It would be very desirable to have a further examination into the decisions on the other side of the hall, where these cases more frequently occur than here, in order that we may more clearly ascertain what the practice is thereand for this purpose, a second * argument was [ * 135 ] ordered. But afterwards the court declared that it was not necessary to hear counsel, as this was a case clearly not within the statute, it being an original undertaking of the defendant Chace, sen. No doubt this decision was right; but the case is cited to show that counsel were allowed to deny the authority of Wain vs. Warlters, and that the court hesitated so far as to order a second *110 argument. There is strong reason to believe that the decision would have been overruled, if the case then before the Court had not been settled upon another principle.
In chancery the doctrine was not at all well received. In the case of a petition to be allowed to prove a debt which was guarantied against the guarantor, no consideration being'expressed, the case of Wain vs. Warlters being cited, the counsel for the petitioner said the decision of the Court of King’s Bench in that case could not be supported. The Lord Chancellor Eldon said, “ There is a variety of authorities directly contradicting the case in the King’s Bench, which is a most important case in its consequences; for the undertaking of one man for the debt of another does not require a consideration moving between them,.”—14 Ves. jun. 189.—So in the case Ex parte Garden. Mr. Bell, in support of the petition, mentioned the case of Wain vs. Warlters, as one which could not be supported. Lord Eldon said, 11 The first objection, viz., that which Wain vs. Warlters was cited to support, is of great importance. Until that case was decided, some time ago, I had always taken the law to be clear that if a man agreed in writing to pay the debt of another, it was not necessary that the consideration should appear on the face of the writing.” This is very strong language; and yet, probably, every judge and lawyer in England and in this country would have felt himself warranted in saying the same. 15 Ves. jun. 286.
But this is not all. The Common Bench also signified their dis sent from this doctrine, as much as could be done with [ * 186 ] out deciding directly contrary to it (22). The case *of Morris vs. Stacy was for the price of shoes sold to another person. The defendant was the agent, and as such ordered the shoes. He proposed to give bills drawn by Wallis on Bromley, endorsed by Burns. He was pressed to endorse them himself, but refused, saying he would give a letter of guaranty, which would be as good. The letter was in these words: “ I herewith send you droughts drawn by Wallis, accepted by Bromley, and endorsed by Burns ; and should the bills not be honored when due, I promise to see that they do so.” The counsel for the defendant cited the case of. Wain vs. Warlters. Gihhs, C. J., said, “ It is sufficient, it appears on the face of the letter that, in consideration the plaintiff would take the notes, the defendant would indemnify him. The consider *111 ation therefore is apparent. I do not think it necessary, in this case, to overrule the decision in Wain vs. Warlters. I think this undertaking binding, notwithstanding that case.” Holt’s N. P. 153. This was in 1816, and it may be plainly inferred, from what fell from the chief justice, that if it had been necessary, the case of Wain vs. Warlters would have been overruled. It was virtually overruled, although not expressly; for no consideration in truth appears in the letter. The signer says, I herewith hand you droughts. This imports no consideration, and it was only from extrinsic evidence that the chief justice’s notion of a consideration could have been obtained. Any thing seems to have been caught at, to save a case from the operation of the doctrine in Wain vs. Warlters.
Such being the reputation of that case in England, it surely does not present a very formidable obstacle to a different construction of the statute in this country; and certainly it would not warrant us in overruling what we believe has been the practical, as well as the just construction in our courts for so long a period. It is indeed desirable that statutes, made for the regulation of personal contracts in commercial countries, should receive similar * adjudications in all courts. But it is better for those [ * 137 ] courts, who may have adopted a novel construction, to retrace their steps, and go back to the old foundations, than that others, from a spirit of comity, should imitate them; for innovation in the administration of justice, or in the principles of jurisprudence, is more to be dreaded than any where else; as it tends to unsettle the minds of the community, and to introduce into the judicial tribunals the practice of legislating, under the guise of declaring the law, which is their proper function.
We have taken pains to inquire what reception the doctrine, which we consider novel and unsound, has met within any of the courts of the United States; and we do not find it has been recognized any where but in New York. We are in the habit of showing great respect to the decisions of the Supreme Court of that state; for that bench, ever since we have been enabled to judge of its character by the masterly reports of Mr. Johnson, has been distinguished by great learning and uncommon legal acumen. If any thing could cause us to hesitate in pronouncing an opinion, which we have arrived at after mature deliberation, it would be to find that opinion contradicted by a deliberate decision of a court we so highly respect.
But there are some circumstances attending the decision upon this subject by that court, which we think may justly, in some measure, impair its influence on our minds. The case of Sears vs. Brink, in which the question first occurred, happened not a great *112 while after the case of Wain vs. Warlters was first promulgated in this country. The habitual veneration, which the courts of this country have ever entertained for the opinions of the great men who successively fill the seats of the Court of King’s Bench, would naturally lead to the adoption of those opinions, in analogous cases. The judicial propensity is to repose upon authority. This propensity, although almost always useful, as it tends to repress [*138] ingenious searches * after novelties and distinctions; which, if indulged, would produce uncertainty in that science, which, more than all others, the public interest requires should be fixed and stable, may sometimes lead to a hasty adoption of principles, which a deliberate investigation would prove unsound. In this case of Sears vs. Brink, Judge Van Ness, who delivered the opinion of the Court, seems to have relied more upon the argument and reasoning of Lord Ellenborough, in the case of Wain vs. Warlters, than upon the resources of his own mind, for the construction of the statute; and this it would be natural for any judge to do, under the like circumstances. Like him, he resorts to the etymology, and the technical import of the term agreement, as the basis of his construction.
I think it has been shown that too much stress was laid upon this source of argument. Indeed, I cannot but entertain the belief that neither the British parliament, nor the legislature of New York or Massachusetts, ever looked into Plowden or Comyns, or any law dictionary, to ascertain the force and meaning of that term, as has been done since, in order to make out the construction of the statute. Sometimes the sense of an instrument or statute is lost by looking too deep for it; as men have been known to impoverish themselves by digging into the bowels of the earth for riches, which they would have obtained with less labor by working upon its surface. Not that I am disposed to treat with disrespect the labors and researches of patient and learned jurists, in ancient or modern times. Certainly the science of the law requires such investigations, but, as in other sciences, the object of pursuit has been sometimes lost, by reason of its being thought at a distance, when all the time it has been near.
Another thing is worthy of remark, viz., that it is probable that neither the Court, nor the counsel, when the case of Sears vs. Brink was discussed, knew that the case of Wain vs. Warlters [ * 139 ] was a suspected case in England; * for neither of them advert to any of the cases in which the doctrine has been doubted. Indeed, the strongest of those cases have been passed upon since the case of Sears vs. Brink. The case of Wain s. Warlters at that time stood in New York unquestioned, and *113 therefore came with great force upon the minds of the bench and bar.
But afterwards, in the case of Leonard vs. Vredenburg, the question was again presented to the New York court; and Chief Justice Kent bestowed the attention of his powerful mind upon it. I do not understand him as approving the doctrine. On the contrary, in reference to the cases of Wain vs. Warlters and Sears vs. Brink, he says—“ I have not been altogether satisfied with the decisions referred to.” He then discovers, what did not occur to him at the trial of the action, that it admitted of a distinction from those two cases, and therefore says—“ The present motion can be determined in favor of the plaintiff, without disturbing them.” He then proceeds to make an ingenious, and, I think, a just classification of the cases which have generally been thought to come within the statute.
His first class is, where credit has been given upon the previous agreement of a third party to pay, or guaranty payment, for goods which shall be delivered. This he calls a collateral engagement within the statute, but no proof of consideration necessary, except the debt Which is created. The collateral undertaking in such case is the essential ground of the credit given ; and the case of a surety or guaranty of a contract, subscribing at the same time with the principal, is within this class. Vide Hunt, Adm,. vs. Adams, 5 Mass. Rep. 358, and Stadt vs. Lill, 9 East, 348.
The second class is, where the collateral security is subsequent to the creation of the debt, and not the inducement to it.. Here a further consideration must be proved, such, I suppose, as forbearing to sue, or the surceasing of a suit.
*And the third class is, when the promise to pay the [ * 140 ] debt of another arises out of some new consideration of benefit or harm, moving between the new contracting parties. Such is the case, when the creditor gives up some lien or attachment, in consequence of the promise of the third party to pay the debt. This latter class he considers an original undertaking, capable of being proved by parole, as not coming within the statute; and this agrees with the English doctrine, as settled in the case of Williams vs. Leper, 3 Burr. 1886.
Now it is a little remarkable, that, in giving so minutely the qualities of these different classes of contracts, and in adverting to Wain vs. Warlters, as coming within the second class, nothing is said from which the necessity of having the consideration, as well as the promise, in writing, can be inferred. All the inference, which can be fairly made, is, that such a promise must have a new consideration proved. But the kind of proof is left undecided; *114 and the case before the Court was determined to be within the third class, which required no proof of a distinct consideration. There was therefore no necessity of “ disturbing the cases which had been decided,” and with which the learned chief justice “ was not altogether satisfied.”
But if the word agreement in the statute is to be referred to collateral promises, as was determined in the cases of Sears vs. Brink and Wain vs. Warlters, it is not easy to see why the first class of cases, any more than the second, should be excluded from the operation of the rule. There must be a consideration. This is admitted on all hands. The only question is about the mode of proof.
When a man, for his own debt, makes a promissory note, not negotiable, and a third party puts his name on the back of the note, this is to be considered a promise to pay the debt of another, and he may be sued either as surety or guarantor. If he is considered a surety, according to our case of Hunt, Adm., vs. Adams, he is viewed as an original promisor ; and no other evidence [ * 141 ] of consideration * would be required, than against the principal in the note. But no man can be held on such a promise, unless it be in writing and signed by him. So that the case is within the statute, and yet whatever consideration moved to the undertaking, may be proved by parole, according to our law, and to the case of Leonard vs. Vredenburg.
Suppose a promissory note given by A to B payable in sixty days, expressly in consideration of a preexisting debt; and C at the same time writes on the back, “ I promise to pay the contents of the within note in ninety days, if A does not pay it according to its tenor, demand being made upon A, when it falls due, and notice given to me of non-payment.” This is certainly a promise to pay the debt of A. No consideration is expressed; and yet the consideration is the credit given to A. It comes within the statute ; for such a promise would be void, unless in writing. But this agreement would be within Chief Justice Kenfs first class of cases, in which the consideration may be proved by parole. All the mischiefs, supposed to be provided against by the statute, would exist in the case put, as much as if the collateral undertaker had signed his name the day after the original promise ; which would bring the promise within the second class of cases, supposed by Chief Justice Kent to be governed by the case of Wain vs. Warlters.
This important question came before the Supreme Court of the United States, in the case of Violett vs. Patton (23). The case *115 was from Virginia, and arose on their statute of frauds, which is like ours and the English statute; except that it provides that the undertaking shall be void, unless the promise or agreement shall be in writing, and signed by the party, &c. Chief Justice Marshall, in delivering the opinion of the Court, considers the variance from the English statute so essential, that the doctrine in the case of Wain vs. Warlters does not apply. It is worthy of remark that the words of the Virginia statute are precisely what Mr. Justice Le Blanc said, in the case of Wain vs. * Warlters, [ * 142 ] he wished the English statute had been. There must be a consideration to a promise, as well as to an agreement; and if the intention of the legislature was, that the consideration of an agreement should be in writing, there seems to be no reason of policy why a different principle should be applied to a promise. For the evils to be remedied by the statute are as great in one case as in the other; it being as easy to set up the consideration of a promise by perjury, as the consideration of an agreement.
The case of Russell vs. Clark & Al., 3 Dallas, 415, was referred to by the counsel for the defendants, as deciding that the consideration of a promise to pay the debt of another must be in writing. But we have looked into that case, and do not find it to be so. Letters were relied upon to prove that the defendants promised to guaranty certain bills of exchange; but the letters did not prove the fact. Parole evidence was admitted at the Circuit Court, to prove that a promise was really intended by the letters; but the Supreme Court reversed the decision, on the ground that, by the statute, the whole agreement, that is, the whole promise, was required to be in writing; and this was certainly correct. Nothing was said about the consideration.
We have not been able to find that any judicial decision has taken place upon the statute of frauds, &c., in any other court within the United States than those I have alluded to. In a note, however, to the case of Wain vs. Warlters, in the Connecticut edition of East’s reports by Mr. Day, an elaborate examination of the doctrine is given by their late Chief Justice Swift. In his argument he has gone into a profound investigation of the legal meaning of the word agreement, in order to meet the principal argument of Lord Ellenborough; and he concludes with a decided disapprobation of the doctrine laid down by the Court of King’s Bench.
* With respect to our own Court, whenever the case [ * 143 J of Wain vs. Warlters has been cited, it has been treated as doubtful, and has never been recognized as law. I have already cited the' observations of Chief Justice Parsons upon it, in the case of Hunt, Adm., vs. Adams; and there is no doubt, from *116 what fell from that great man upon that occasion, that, had the case before him required it, he would have saved us the trouble of this elaborate investigation.
The case of Ulen vs. Kittredge, 7 Mass. Rep. 233, was decided in direct opposition to the principle contended for by the defendants in this action; although the cases of Wain vs. Warlters and Sears vs. Brink were cited and urged by the able and learned counsel for the defendant. Indeed, the Court, in the case referred to, went far beyond what is necessary to support the action now before us. For the endorsement of Kittredge was in blank, upon a preexisting note, to which he was not a party; and the plaintiff was permitted, not only to prove by parole the consideration, but to insert the words of a guaranty over the name of Kittredge, upon proof that he declared his signature as good, for the purpose intended, as if any thing had been written over it.
Upon this review of the cases, which have arisen in this country and in England upon this important subject, we are relieved from any imputation of disrespect towards the courts of King’s Bench, or of New York, in declining to adopt the construction which they have given to this statute.
We find the case of Wain vs. Warlters to have been received with doubt and hesitation by the tribunals of the same country in which it was decided; that the case of Sears vs. Brink has not been fully recognized, in any case arising subsequently in New York; that in the Supreme Court of the United States the doctrine was doubted, and the application of it avoided ; that in Connecticut an eminent jurist has borne testimony against it; that in our own state, a judge of the first eminence has spoken of it ( * 144 ] * unfavorably; and that one case has been decided in direct opposition to it.
We are not, therefore, overruling a settled principle, or introducing a new construction, in refusing to yield to this doctrine, but are merely vindicating what we believe to be the true and established construction, from the doubts brought upon it by the decision of the Court of King’s Bench.
A contemporaneous is generally the best construction of a statute. It gives the sense of a community, of the terms made use of by a legislature. If there is ambiguity in the language, the understanding and application of it, when the statute first comes into operation, sanctioned by long acquiescence on the part of the legislature, and judicial tribunals, is the strongest evidence that it has been rightly explained in practice. A construction under such circumstances becomes established law ; and after it has been acted upon for a century, nothing but legislative power can constitutionally *117 effect a change. We can say with Lord Ellenhorough that, until the case of Wain vs. Warlters was decided, “ we had always taken the law to be clear, that if a man agreed in writing to pay the debt of another, it was not necessary that the consideration should appear on the face of the writing; ” and so understanding the law, we have no authority or disposition to change it.
The Court, for the foregoing reasons, are unanimously of opinion that the plaintiff’s action is well maintained by the writing declared on, and by the parole proof which was given to support it (24).
Judgment on the verdict (25).

 [The decision in Churchill vs. Suter is unsound. See note to Manning vs. Wheatland, 10 Mass. 502, and to Warren vs. Merry, 3 Mass. 565.—1 Starkic, Ev. 9, 2d English edition.—No inconvenience, but much benefit, would probably result from overruling a decision so palpably wrong. It is remarkable, nevertheless, that the Court adhere to their decisions with great pertinacity, apparently regardless of the practical consequences of the rule which they have once adopted. They claim much more respect for their decisions than the learned courts in England have ever pretended to claim for their judgments. See the authorities referred to in Ram on thé Science of Legal Judgments, pp. 182,186.161- 168.—Ed.]

 16 Mass. Rep. 118.

 [Pray is not the consideration a most essential part or every agreement? Can there he a legal agreement without a consideration ?—Barrett vs. Trussell, 4 Taunt. 117.—Saunders vs. Wakefield, 4 B. & A. 595.—Goodman vs. Chace, 1 B. & A. 297.— Jenkins vs. Reynolds, 6 Moore, 81.—3 B. & B. 14.—Morley vs. Boothby, 3 Bingh. 107 —10 Moore, 395.—Cole vs. Dyer, 1 Turn. 304.—1 C. & J. 461.—But the law is now settled by the Revised Statutes, c. 74, § 2.—Ed.]

 [The difference seems quite clear. In the former case the memorandum imported the consideration on the face of it; in the latter case it did not. See note Ur Hunt vs. Adams, 5 Mass. 360, ed. 1835.—Ed.]

0) [The same principle was applied in both cases.—Ed.]

 [See the note to this case before referred to.—Ed.]

 1 Bam. fy Aid■ 299.

 [The Court of Common Pleas have repeatedly acted upon the rule of Wain vs. Warlters.—See Jenkins vs. Reynolds, 6 Moore, 81.—3 B. & B. 14.—Morley vs Boothby, 3 Bingh. 107.—10 Moore, 395.—And the same rule has been adopted in the Exchequer.—See Cole vs. Dyer, 1 Tyrw. 304.—1 C. if J. 461.—And the same rule has also been adopted in many of the courts in the United States.—Aldridge vs. Turner.—1 Gill & J. 427.—Elliot vs. Geize, 7 Harr. & J. 457.—Leonard vs. Vredenburgh, 8 Johns 29. —Sloan vs. Wilson, 4 Harr, & J. 322.— Wyman vs. Gray, 7 Harr, & J. 400.—Ed.

 5 Cranch, 142.

 [By the Revised Statutes, c. 74, § 2, it is provided that the consideration of the promise, contract, or agreement, need not he set forth in the writing signed by the party to be charged therewith, but may be proved by any other legal evidence. But it may well be questioned whether it be not as important that there should be a memorandum of the consideration, as it is that there should be a memorandum of any other part of the agreement. There is as much room for dispute about that, as about the other matters embraced in an agreement or contract.—Ed.]

 In Trinity Term, 1821, the Court of King’s Bench unanimously confirmed the decision in Wain vs. Warlters.—4 Barn. 4 & Ald. 595, Saunders vs. Wakefield.